Filed 6/30/22  In re N.V. CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re N.V., et al., Persons Coming Under the Juvenile Court Law. | B316635 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 20CCJP03970) |
| Plaintiff and Respondent, | |
| v. | |
| W.H., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Steff R. Padilla, Judge Pro Tempore.  Affirmed with directions.

Terence M. Chucas, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and Aileen Wong, Deputy County Counsel, for Plaintiff and Respondent.

W.H. (Father) appeals from the juvenile court's orders terminating his parental rights to two of his children, N.V. and K.V. (the children). Father contends that the Los Angeles County Department of Children and Family Services (DCFS) failed to comply with its duty of inquiry to determine whether there is a reason to believe that the children are Indian children within the meaning of the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.). We agree with Father and remand the case to the juvenile court with directions to ensure compliance with ICWA and California's ICWA related law.

## FACTUAL AND PROCEDURAL SUMMARY[1]

In July 2020, the mother, Rebecca V. (Mother), tested positive for amphetamines and marijuana when she gave birth to K.V. K.V. also tested positive for these substances. At that time, Father was incarcerated. N.V. was nine months old and in Mother's care.

DCFS took the children into protective custody and placed N.V. with a maternal aunt. K.V. remained in the hospital for approximately seven weeks after her birth, and was then placed with the maternal aunt. The children remained in that placement throughout the dependency proceeding.

On July 28, 2020, DCFS filed a juvenile dependency petition concerning the children. Under Welfare and Institutions Code section 300, subdivisions (b) and (j),[2] DCFS alleged that Mother and Father have an extensive substance abuse history that

---

[1] Because the only issue on appeal is whether DCFS's failure, if any, to comply with its duty of inquiry under section 224.2 requires reversal of the court's orders, we focus on the facts and procedural history relevant to that issue.

[2] Subsequent unspecified statutory references are to the Welfare and Institutions Code.

renders them incapable of providing for the children, and Father has a criminal history that includes convictions for drug related offenses.

In the petition, a social worker stated that on July 24, 2020, she spoke with the maternal aunt, who stated that neither Mother nor Father have Indian ancestry.

On July 31, 2020, Mother filed Parental Notification of Indian Status forms (Judicial Council Forms, form ICWA-020 (rev. Mar. 25, 2020)) for the children. The form calls for the parent to check a box if any of the following applies: (1) the parent is or may be a member of, or eligible for membership in, a federally recognized Indian tribe; (2) the child is or may be a member of, or eligible for membership in, a federally recognized Indian tribe; (3) one or more of the parent's lineal ancestors is or was a member of a federally recognized Indian tribe; (4) the parent or the child is a resident of or domiciled on a reservation, rancheria, Alaska Native village, or other tribal trust land; (5) the child is or has been a ward of a tribal court; or (6) the parent or child possesses an Indian identification card indicating membership or citizenship in an Indian tribe. Mother checked a box stating that none of the foregoing statements applied.

The detention hearing was held on July 31, 2020. The juvenile court asked whether Mother had any native American or Indian ancestry. Her counsel, who was communicating simultaneously with Mother by telephone, responded that Mother is not aware of any such ancestry and that "[n]either party has any ICWA ancestry according to [counsel's] knowledge." The court stated it had received Mother's ICWA-020 forms and found it had "no reason to know this is a case involving the [ICWA]." The juvenile court ordered the parents to keep DCFS, their counsel, and

the court aware of any new information relating to possible ICWA status.

According to DCFS's jurisdiction/disposition report, on August 20, 2020, Father "denied any knowledge of any Native American ancestry." Father has three sisters and one brother, all of whom live in or near Los Angeles County. In addition to Father's four siblings, Father identified his parents (the children's paternal grandmother and grandfather) as persons within his "support system."

On August 27, 2020, the maternal aunt and maternal grandmother "denied any knowledge of any Native American ancestry with regards to the maternal side of the family."

On September 4, 2020, Father filed ICWA-020 forms (Judicial Council Forms, form ICWA-020 (rev. Mar. 25, 2020)) for the children indicating that none of the statements on the form regarding Indian status applied.[3]

On October 15, 2020, a social worker spoke with the paternal grandmother about visits with the children. It does not appear from the record that the social worker asked the paternal grandmother any ICWA related questions.

After a jurisdiction hearing held in April 2021, the court sustained the dependency petition.

During the disposition hearing on May 5, 2021, the court found that ICWA did not apply. The court declared the children dependents of the court, denied the parents reunification services,

---

[3] It does not appear from our record that the court informed Father of the court's prior order that the "[p]arents are to keep [DCFS], their [a]ttorney and the [c]ourt aware of any new information relating to possible ICWA status."

and set the matter for a hearing to be held pursuant to
section 366.26.

The court held the section 366.26 hearing on September 14
and October 1, 2021.  At the conclusion of the hearing, the court
found that the children are adoptable, designated the children's
maternal aunt as their prospective adoptive parent, and terminated
the parents' parental rights.

Father appealed.

## DISCUSSION

When, as here, a child has been placed in temporary custody
of a county welfare department pursuant to section 306, DCFS
has "a duty to inquire whether that child is an Indian child" within
the meaning of ICWA.  (§ 224.2, subd. (b).)[4]  The inquiry includes
"asking the child, parents, legal guardian, Indian custodian,
extended family members, others who have an interest in the child,
and the party reporting child abuse or neglect, whether the child
is, or may be, an Indian child and where the child, the parents,
or Indian custodian is domiciled."  (*Ibid.*; see Cal. Rules of Court,
rule 5.481(a)(1).)  An extended family member is, generally, one
who is related to the child as a grandparent, aunt or uncle, sibling,
brother-in-law or sister-in-law, niece or nephew, first or second
cousin, or stepparent.  (25 U.S.C. § 1903(2); § 224.1, subd. (c); 224.2,
subd. (b).)

Father contends that the juvenile court's orders terminating
parental rights must be reversed because DCFS failed to comply

---

[4] The ICWA defines an "Indian child" as "unmarried person
who is under age eighteen and is either (a) a member of an Indian
tribe or (b) is eligible for membership in an Indian tribe and is
the biological child of a member of an Indian tribe."  (25 U.S.C.
§ 1903(4).)

with this duty of inquiry. In particular, Father argues that, although DCFS was aware of, or had contact with, the maternal grandmother, a maternal aunt, and several paternal relatives, the record does not reveal that these persons were asked whether the children are or may be Indian children.

Initially, we note that Father is incorrect as to whether ICWA inquiries were made to the children's maternal relatives. Not only did Mother submit the ICWA-020 form indicating there was no reason to believe the children are Indian children, our record indicates that DCFS social workers asked the maternal aunt whether the children have any Indian ancestry on two occasions— July 24, 2020, and August 27, 2020—and she denied any such knowledge of such ancestry. A social worker also asked the maternal grandmother about possible Indian ancestry, which she denied on August 27, 2020. Father does not identify any other maternal relatives who could be asked about the children's Indian ancestry and our record does not indicate the existence of any other maternal relatives. DCFS therefore complied with its duty of inquiry as to the maternal side of the children's family.

The record, however, does indicate that Father has four siblings living in or near Los Angeles and that he identified them and his parents as his support system. Such persons are among the "extended family members" of whom an ICWA related inquiry must be made. (25 U.S.C. § 1903(2); § 224.1, subd. (c); 224.2, subd. (b).) It does not appear from our record that DCFS contacted or attempted to contact any of these paternal relatives other than the paternal grandmother, and spoke with the paternal grandmother about visitation only. DCFS, therefore, failed to comply with its duty of initial inquiry.

The remedy on appeal for a social welfare agency's failure to comply with the duty of initial inquiry is unsettled. (See, e.g., *In*

6

*re Dezi C.* (June 14, 2022, B317935) __ Cal.App.5th__ [2022 WL 2128670] [failure to comply with duty of initial inquiry is harmless unless the record, together with any proffer by the appellant, suggests a reason to believe that the child may be Indian children]; *In re A.R.* (2022) 77 Cal.App.5th 197, 207 [reversal is required "in all cases where ICWA requirements have been ignored"]; *In re J.C.* (2022) 77 Cal.App.5th 70, 80 [court "must remand for a proper inquiry" where "[DCFS's] failure to conduct an adequate inquiry makes it impossible for the parent to show prejudice"]; *In re Benjamin M.* (2021) 70 Cal.App.5th 735, 744 (*Benjamin M.*) [reversal required when "the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child"]; *In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1431 [in the absence of a representation by the appellant of Indian heritage, "there can be no prejudice and no miscarriage of justice requiring reversal"].)

This division of this court has generally evaluated this issue to determine whether an available extended family member who was omitted from the social workers' ICWA inquiry would likely have information that would "bear meaningfully" on the question whether the child is an Indian child. (See, e.g*.; In re A.C.* (2022) 75 Cal.App.5th 1009, 1017; *In re S.S.* (2022) 75 Cal.App.5th 575, 582, *In re Darian R.* (2022) 75 Cal.App.5th 502, 509−510.) In making this determination, we have rejected "a wooden approach to prejudice" (*In re A.C., supra,* at p. 1017) and refused to require further inquiry when, based upon the entire record, it is apparent "that additional information would not have been meaningful to the inquiry" (*Benjamin M., supra*, 70 Cal.App.5th at p. 743). (See, e.g., *In re S.S., supra,* at p. 582 [failure to inquire of maternal grandmother was harmless where maternal grandmother was in

contact with social worker and had a strong incentive to bring to the court's attention facts suggesting the child is an Indian child].)

Here, our record does not disclose any facts suggesting that the information obtainable from the paternal aunts, uncle, and grandparents would not be meaningful to the ICWA inquiry.[5] Although Father indicated in his ICWA-020 form that he had no information suggesting the children are or may be Indian children, the filing of that form, without more, is insufficient to render the failure to ask extended family members harmless. (See *In re Y.W.* (2021) 70 Cal.App.5th 542, 554.) We cannot, therefore, conclude that DCFS's failure to inquire of the paternal aunts, uncle, and grandparents is harmless.

When, as here, the failure to conduct an adequate inquiry is not harmless, we will ordinarily conditionally affirm the challenged order with directions to ensure the agency's compliance with ICWA and related law. (See, e.g., *In re J.C.*, *supra*, 77 Cal.App.5th at p. 84; *In re Antonio R.* (2022) 76 Cal.App.5th 421, 436−437 & fn. 11; *In re A.C.*, *supra*, 75 Cal.App.5th at p. 1018.) We do so here.

---

[5] DCFS filed a motion to have this court take judicial notice of certain minute orders issued in dependency cases concerning the children's siblings and ICWA-020 forms filed by the parents in the other cases. Father opposes the motion on the grounds that (1) DCFS did not produce the items in the juvenile court in this case and fails to explain the failure to do so; (2) the law governing DCFS's duty of initial inquiry has changed since the court made the orders in the prior dependency cases, and such orders are therefore irrelevant to the instant appeal; and (3) this court should review the challenged orders based on the record before the juvenile court at the time the orders were made. We deny the motion.

## DISPOSITION

The orders made at the section 366.26 hearing are conditionally affirmed.  Upon remand, with respect to Father, the juvenile court shall direct DCFS to comply with its duties of inquiry under section 224.2 and to make the report to the court required by rule 5.481(a)(5) of the California Rules of Court as soon as practicable.  If the juvenile court finds the children are Indian children, it shall vacate its section 366.26 orders and proceed in accordance with ICWA and related California law.  If the court determines that the children are not Indian children, the order terminating parental rights shall remain in effect.

NOT TO BE PUBLISHED.

ROTHSCHILD, P. J.

We concur:

CHANEY, J.

MORI, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

9